**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
CASE NUMBER:** 2:20-cv-02962-DCN

| | |
|---|---|
| Nautilus Insurance Company, <br><br>                                         Plaintiff, <br><br> v. <br><br> Craig Elwood, George Christodal, NC Trailer Park, LLC, Ekaterina Al Quzza, Samuel King, III, Angela King, and Heather Shaw, <br><br>                                         Defendants. | **COMPLAINT** <br> **(Declaratory Judgment)** <br> **(Non-Jury)** |

Plaintiff, Nautilus Insurance Company (hereinafter "Nautilus"), seeks declaratory relief to determine the rights of the parties and shows as follows:

**JURISDICTION & VENUE**

1.      Nautilus is an insurance company organized and existing under the laws of the State of Arizona with its principal place of business in the State of Arizona. Nautilus is authorized to transact business in the State of South Carolina, including writing policies of insurance.

2.      Upon information and belief, Defendant Craig Elwood is a citizen and resident of Charleston County, South Carolina.

3.      Upon information and belief, Defendant George Christodal, also known as George Christodal, II, is a citizen and resident of Charleston County, South Carolina.

4.      Upon information and belief, Defendant NC Trailer Park, LLC is a limited liability company organized and existing under the laws of State of South Carolina with its principal place of business in Charleston County, South Carolina. Upon information and belief, Defendant NC Trailer Park, LLC owns and operates a trailer park in North Charleston, South Carolina.

1

5. Upon information and belief, Defendant Samuel King, III is a citizen and resident of Charleston County, South Carolina.

6. Upon information and belief, Defendant Angela King is a citizen and resident of Charleston County, South Carolina.

7. Upon information and belief, Defendant Heather Shaw is a citizen and resident of Charleston County, South Carolina.

8. This matter is brought in part pursuant to Rule 57 of the Federal Rules of Civil Procedure and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.; there is a real or justiciable controversy between the parties, and by these proceedings Plaintiff asks this Court to inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth below.

9. Venue is proper in this Division and this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) as, upon information and belief, one or more Defendants resides in this Division and a substantial part of the events giving rise to this claim occurred in this Division.

10. The amount in controversy exceeds Seventy-Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interests and costs, and there is complete diversity of citizenship. Therefore, this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332(a)(1).

## FACTS

**The Nautilus Policy**

11. Nautilus issued a commercial policy, Policy No. NN781194, to NC Trailer Park, LLC with effective dates of June 11, 2017 to June 11, 2018 (hereinafter the "Policy"). The Policy

provides a general aggregate limit of $2,000,000. The Policy lists the business description as "mobile home park."

12. The Policy provides coverage to persons and entities qualifying as an "insured" for certain risks under the insuring agreement and excludes certain risks through policy exclusions. Nautilus craves reference to the Policy for all terms, conditions, and provisions therein and incorporates them by reference herein. A copy of the Policy is attached hereto as Exhibit A.

13. The Policy provides in pertinent part:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\*\*\*

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….
   \*\*\*
   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   \*\*\*
2. **Exclusions**
   This insurance does not apply to:
   a. **Expected Or Intended Injury**
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured….
      \*\*\*
   o. **Personal And Advertising Injury**
      "Bodily injury" arising out of "personal and advertising injury".

3

p. **Access Or Disclosure Of Confidential Or Personal Information and Data-Related Liability [Endorsement CG 21 07 05 14]**
Damages arising out of:
(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information;
\*\*\*

q. **Recording And Distribution Of Material Or Information in Violation Of Law**
"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
\*\*\*
(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communications or distribution of material or information.
\*\*\*

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies….
   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**
   This insurance does not apply to:
   a. **Knowing Violation Of Rights Of Another**
   "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
   b. **Material Published With Knowledge Of Falsity**
   "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.
   \*\*\*
   d. **Criminal Acts**
   "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.
   \*\*\*

    **p. Recording And Distribution Of Material Or Information in Violation Of Law**

    "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

***

    (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communications or distribution of material or information.

***

    **Access Or Disclosure Of Confidential Or Personal Information [Endorsement CG 21 07 05 14]**

    "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

***

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:
***
   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
***
2. Each of the following is also an insured:
   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" other than…your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business….
***

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

***

## SECTION V – DEFINITIONS
***

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
***

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\*\*\*

   b. Malicious prosecution;

\*\*\*

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

\*\*\*

### EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES

\*\*\*

This insurance does not apply to punitive or exemplary damages.

\*\*\*

**The King Action**

14.    On February 1, 2018, Samuel King, III, and Angela King filed suit in the Charleston County Court of Common Pleas against Craig Elwood, NC Trailer Park, LLC and others, styled as: Samuel B. King, III, and Angela Smoak King v. Craig Elwood, et al, Civil Action No. 2018-CP-10-00478 (hereinafter the "King Action"). The Kings have since filed a second amended complaint in the action (hereinafter the "King Complaint").

15.    The King Complaint alleges that Craig Elwood was involved in a divorce proceeding in 2017 in which there were allegations that he used drugs. The King Complaint alleges that at a dinner party in 2017 the Kings told another couple that Craig Elwood uses drugs in front of children and allows children to use drugs under his supervision.

16.    The King Complaint alleges these statements made it back to Craig Elwood and that Elwood posted defamatory messages about the Kings on Facebook accusing them of being alcoholics and through Facebook messenger accusing Samuel King of molesting/abusing his

6

daughter. The King Complaint also alleges Craig Elwood wanted the Kings to sign an affidavit stating that did not use drugs, such affidavit to be used in Elwood's divorce action.

17. The King Complaint alleges Elwood threatened that he would report the Kings to the South Carolina Department of Social Services ("DSS") for child abuse and report Angela King for illegal prescription drug use unless they complied with his demands.

18. The King Complaint alleges Elwood harassed the Kings by repeatedly driving by their house and yelling that they were being investigated by DSS for child abuse. The King Complaint also alleges that Elwood called DSS on July 31, 2017 and falsely reported that Angela King physically abused her daughter and that the Kings gave their son drugs to sell.

19. The King Complaint alleges that thereafter political style yard signs were posted around Mt. Pleasant, South Carolina and the greater Charleston area accusing the Kings of child abuse and prescription drug abuse and accusing Samuel King of child pornography. The King Complaint alleges Elwood also posted some of the signs to his Facebook page.

20. The King Complaint also alleges that, after the initial DSS investigation concluded and within in days of the service of the King Action on Elwood, a second report to DSS was made with the same false allegations against the Kings. The King Complaint alleges that, within days of such service of the King Action, Elwood and George Christodal escorted Elwood's son to the Charleston County Sheriff's office to have him falsely report that Angela King provide alcohol to minors.

21. The King Complaint alleges that Elwood and Christodal are co-owners of NC Trailer Park, LLC and Ekaterina Al Quzza[1] was an employee of NC Trailer Park, LLC. The King Complaint alleges Christodal and Al Quzza participated in some of the foregoing alleged acts. The

---

[1] Incorrectly identified in the King Complaint and Shaw Complaint as "Katrina 'Katie' Alquzza."

7

King Complaint alleges that assets of NC Trailer Park, LLC were used to commit the foregoing alleged acts.

**The Shaw Action**

22. On March 1, 2018, Heather Shaw filed suit in the Charleston County Court of Common Pleas against Craig Elwood, NC Trailer Park, LLC and others, styled as: <u>Heather Shaw v. Craig Elwood, et al</u>, Civil Action No. 2018-CP-10-01110 (hereinafter the "Shaw Action"). Heather Shaw has since filed an amended complaint in that action (hereinafter the "Shaw Complaint").

23. Heather Shaw was the attorney representing Craig Elwood's wife in their divorce proceeding.

24. The Shaw Complaint alleges that in the fall of 2017 the defendants in that action published defamatory statements to third persons about Shaw alleging she is unfit for her job as an attorney and subject to an insidious disease.

25. The Shaw Complaint alleges that in January 2018 the defendants in that action posted defamatory political style yard signs around Mt. Pleasant, South Carolina. The Shaw Complaint alleges these signs accused her of immoral behavior, performing no due diligence for her clients, drafting lies in court documents, being bi-polar/mentally ill, and abusing her own children. The Shaw Complaint alleges these signs were also posted on Facebook.

26. The Shaw Complaint also alleges that there was a "violent disturbance" at Shaw's work when Elwood sent someone to pick up paperwork related to the divorce action and there was subsequent review on the internet giving her a low rating and accusing her of "verbal assault."

27. The Shaw Complaint alleges that Elwood and Christodal are co-owners of NC Trailer Park, LLC and Ekaterina Al Quzza was an employee of NC Trailer Park, LLC. The Shaw

8

Complaint alleges Christodal and Al Quzza participated in some of the foregoing alleged acts. The Shaw Complaint alleges that assets of NC Trailer Park, LLC were used to commit the foregoing alleged acts.

28. The Defendants have made claims for liability coverage under the Nautilus Policy for the King Action and the Shaw Action.

**FOR A FIRST DECLARATION**

29. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

30. The Policy defines "personal and advertising injury" as including: (1) malicious prosecution; (2) oral or written publication, in any manner, of material that slanders or libels a person or disparages a person's services; and (3) oral or written publication, in any manner, of material that violates a person's right of privacy.

31. The King Complaint alleges a malicious prosecution claim, specifically that defendants made two false reports to DSS about the Kings and aided Elwood's son in making a false criminal report to the Sheriff about Angela King.

32. The King Complaint alleges a "Defamation/Libel/Slander" claim, specifically that Elwood posted Facebook messages accusing the Kings of being alcoholics and accusing them of abusing their daughter and that the defendants posted yard signs accusing the Kings of prescription drug abuse and child abuse.

33. The Shaw Complaint alleges a "Defamation/Libel/Slander" claim, specifically that the defendants published statements to third persons about Shaw, Elwood's ex-wife's divorce attorney, alleging she is unfit for her job and subject to an insidious disease and posted signs accusing her of immoral behavior, performing no due diligence for her clients, drafting lies in court

9

documents, being bi-polar/mentally ill and abusing her children. The Shaw Complaint alleges these signs were also posted on Facebook and may have been published to third parties by email and/or text message.

34. Under the terms of the Policy, Personal And Advertising Injury coverage only applies to "personal and advertising injury" caused by an offense arising out of NC Trailer Park, LLC's business.

35. As set forth on the Policy declarations page, NC Trailer Park, LLC's business is the ownership and operation of a mobile home park.

36. Elwood, Christodal and Al Quzza's alleged actions did not arise out of the business of operating a mobile home park.

37. As alleged in the King Complaint, the alleged actions were motivated by statements made by the Kings at a dinner party and accusations made by Krista Elwood against Craig Elwood in their divorce action. As alleged in the Shaw Complaint, the alleged actions against Shaw were motivated by her representing Krista Elwood against Craig Elwood in their divorce action.

38. The actions allegedly taken by the defendants in the King Complaint and in the Shaw Complaint were not in furtherance of the mobile home park business of NC Trailer Park, LLC.

39. Therefore, Nautilus is entitled to a declaration that its Policy provides no Personal and Advertising Injury coverage for the claims alleged in the King Complaint and claims alleged in the Shaw Complaint because the acts alleged in those Complaints did not arise out of NC Trailer Park, LLC's business.

## FOR A SECOND DECLARATION

40. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

41. The Policy provides Bodily Injury and Property Damage Liability coverage for sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence."

42. The Policy defines "property damage" as: (1) physical injury to tangible property, including all resulting loss of use of that property; and (2) loss of use of tangible property that is not physically injured. The King Complaint and Shaw Complaint do not allege any "property damage" as that term is defined in the Policy.

43. The Policy defines "bodily injury" as bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

44. The Policy excludes coverage for "bodily injury" arising out of "personal and advertising injury".

45. The Policy defines "personal and advertising injury" as including: (1) malicious prosecution; (2) oral or written publication, in any manner, of material that slanders or libels a person or disparages a person's services; and (3) oral or written publication, in any manner, of material that violates a person's right of privacy.

46. To the extent any "bodily injury" is alleged in the King Complaint or Shaw Complaint, it is alleged to arise out of one or more of the above categories of "personal and advertising injury."

47. The King Complaint alleges a "Defamation/Libel/Slander" claim and a malicious prosecution claim. The Shaw Complaint alleges a "Defamation/Libel/Slander."

11

48. Therefore, Nautilus is entitled to a declaration that its Policy does not provide any Bodily Injury Liability coverage for any of the acts alleged in the King Complaint of the Shaw Complaint.

### FOR A THIRD DECLARATION

49. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

50. The Policy excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

51. The King Complaint alleges a civil conspiracy cause of action. The Shaw Complaint alleges a civil conspiracy cause of action.

52. Under South Carolina law, a required element of a civil conspiracy cause of action is intent to harm.

53. Therefore, Nautilus is entitled to a declaration that its Policy provides no coverage for "bodily injury" or "property damage" alleged as a result of the alleged civil conspiracy.

### FOR A FOURTH DECLARATION

54. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

55. The Policy only provides Bodily Injury and Property Damage Liability coverage for "bodily injury" or "property damage" caused by an "occurrence", which is defined as an accident.

56. The Policy excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

57. The King Complaint alleges blackmail, the instigation of two unwarranted DSS investigation, a false police report and a lengthy course of defamation all in retaliation to Angela King's prior derogatory comments made about Elwood and/or to assist Elwood in his divorce proceeding.

58. The Shaw Complaint alleges harassment and a lengthy course of defamation against the divorce attorney opposing Elwood in his divorce proceeding with Krista Elwood.

59. The acts alleged in the King Complaint and Shaw Complaint are acts that could only be intentionally executed – i.e. threatening the Kings, planting yard signs all over town, communicating disparaging comments about the underlying plaintiffs, reporting the Kings to DSS, participating in "violent" office confrontations, etc.

60. The factual allegations of the King Complaint and the Shaw Complaint evidence an intent to harm the Kings and Shaw, respectively.

61. The course of conduct alleged in the King Complaint and Shaw Complaint does not allege an "occurrence" – i.e. an accident.

62. Therefore, Nautilus is entitled to a declaration that its Policy does not provide coverage for any Bodily Injury and Property Damage Liability coverage for the acts alleged in the King Complaint and Shaw Complaint.

## **FOR A FIFTH DECLARATION**

63. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

64. The Policy defines "insured" to include: (1) members of NC Trailer Park, LLC but only with respect to the conduct of NC Trailer Park, LLC's business; (2) NC Trailer Park, LLC's managers but only with respect to their duties as NC Trailer Park, LLC's managers; and (3) NC

Trailer Park, LLC's employees, other than its managers, but only for acts within the scope of their employment by NC Trailer Park, LLC or while performing duties related to the conduct of NC Trailer Park, LLC's business.

65. The King Complaint and Shaw Complaint allege that Al Quzza was an employee of NC Trailer Park, LLC and an employee of Craig Elwood and George Christodal.

66. Upon information and belief, Al Quzza was hired by NC Trailer Park, LLC to handle billing, rental checks, and expenses for the mobile home park.

67. The King Complaint and Shaw Complaint allege that Craig Elwood and George Christodal are members of NC Trailer Park, LLC.

68. The acts allegedly taken by Al Quzza in the King Complaint and Shaw Complaint were not acts within the scope of her employment by NC Trailer Park, LLC or the performance of duties related to the conduct of NC Trailer Park, LLC's business.

69. The acts allegedly taken by Craig Elwood and George Christodal in the King Complaint and Shaw Complaint were personal acts and not acts with respect to the conduct of NC Trailer Park, LLC's business.

70. Therefore, Nautilus is entitled to a declaration that Al Quzza, Elwood, and Christodal do not qualify as insureds under the Nautilus Policy for the acts alleged in the King Complaint and Shaw Complaint and Nautilus has no duty to defend them against such allegations.

## FOR A SIXTH DECLARATION

71. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

72. The Policy excludes Bodily Injury and Property Damage Liability coverage for damages arising out of any access to or disclosure of any person's confidential or personal information, including health information or any other type of nonpublic information.

73. The Policy excludes Personal and Advertising Injury coverage for "personal and advertising injury" arising out of any access to or disclosure of any person's confidential or personal information.

74. The King Complaint alleges that Elwood repeatedly disclosed in numerous ways and to numerous persons that the Kings were alcoholics, abused prescription medication, abused their children and were under investigation for child abuse and prescription drug abuse.

75. The Shaw Complaint alleges that the underlying defendants disclosed in numerous ways to numerous persons that Shaw was bi-polar/mentally ill, abusing her children, that she was in a lesbian marriage, and that she was immoral.

76. Therefore, Nautilus is entitled to a declaration that its Policy provides no coverage for damages alleged as a result of the disclosure of confidential or personal information of the underlying plaintiffs.

## FOR A SEVENTH DECLARATION

77. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

78. The Policy excludes Bodily Injury and Property Damage Liability coverage for any "bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate any federal, state or local statute that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communications or distribution of material or information.

79. South Carolina Code §§ 63-7-440 and 63-7-430 prohibit the transmitting of a false report of child abuse or neglect and the transmitting of such a report maliciously or in bad faith.

80. The King Complaint alleges that Elwood threatened to report the Kings for child abuse unless they signed affidavits stating he did not use drugs. The King Complaint alleges these affidavits were to be used in Elwood's divorce proceeding.

81. The King Complaint alleges that the underlying defendants made two false reports of child abuse to DSS "for an improper purpose that had nothing to do with any actual reasonable concern about the Kings' ability to properly care for their children or any legitimate concern with the alleged criminal acts of the Kings. The King Complaint alleges these reports were initiated for "some ulterior purpose or to gain leverage over" the Kings.

82. The King Complaint also alleges that the underlying defendants falsely reported that the Kings were child abusers through the use of yard signs and Facebook.

83. The Shaw Complaint alleges that the underlying defendants falsely reported that Shaw was a child abuser through the use of yard signs and/or Facebook.

84. Therefore, Nautilus is entitled to a declaration that its Policy provides no Bodily Injury and Property Damage Liability coverage for any "bodily injury" or "property damage" resulting from the alleged child abuse allegations in the King Complaint and Shaw Complaint.

### **FOR AN EIGHTH DECLARATION**

85. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

86. The Policy excludes Personal and Advertising Injury coverage for "personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

87. The King Complaint alleges that Elwood blackmailed the Kings and threatened to report them to DSS unless they put in writing that he did not do drugs and/or convinced his estranged wife not to drug test him. Blackmail is a crime in South Carolina.

88. The King Complaint alleges that Elwood repeatedly contacted the Kings with derogatory messages by social media and by text after being asked to stop. The King Complaint also alleges that Elwood repeatedly drove by the Kings' home and yelled that they were under investigation for child abuse and illegal drug activity. In addition, the King Complaint alleges that the underlying defendants harassed the Kings with yard signs around their community and at Mr. King's work, causing them to fear for their physical safety. Harassment and stalking are crimes in South Carolina.

89. The King Complaint alleges the underlying defendants coerced Elwood's son to file a false report with police concerning Angela King. Under South Carolina law, the filing of a false police report is a crime.

90. The Shaw Complaint alleges that the underlying defendants repeatedly posted derogatory messages about Shaw on signs, on Facebook, by email and by text. The Shaw Complaint alleges that the underlying defendants caused a "violent disturbance" at her place of business and caused her to become concerned for the safety and wellbeing of herself and her family. Harassment and stalking are crimes in South Carolina.

91. Therefore, Nautilus is entitled to a declaration that its Policy provides no Personal and Advertising Injury coverage for damages alleged as a result of the above conduct described in the King Complaint and the Shaw Complaint.

## FOR A NINTH DECLARATION

92. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

93. The Nautilus Policy does not provide coverage for punitive or exemplary damages.

94. The King Complaint and Shaw Complaint seek punitive damages.

95. Therefore, Nautilus is entitled to a declaration that its Policy provides no coverage for any part of an award entered against the underlying defendants in the King Action or Shaw Action for punitive damages.

## FOR A TENTH DECLARATION

96. Plaintiff repeats and realleges each and every one of the allegations set forth above as if set forth verbatim herein.

97. The Nautilus Policy insures NC Trailer Park, LLC, a limited liability company whose business, as disclosed to Nautilus, is owning and operating a mobile home park. The Nautilus policy also insureds certain other persons for their acts related to this business.

98. Under the terms of the Nautilus Policy, no person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

99. The King Complaint and Shaw Complaint allege that the underlying defendants performed the acts alleged in those complaints on behalf of Charleston Drywall Trim & Paint, LLC. Charleston Drywall Trim & Paint, LLC is not a Named Insured on the Nautilus Policy Declarations.

100. The King Complaint and Shaw Complaint allege a "Piercing the Corporate Veil, Amalgamation, Single Business Enterprise" cause of action alleging that the corporate forms were

disregarded in perpetrating the acts alleged in each complaint and that the various entity defendants should be treated as one entity.

101.    To the extent these claims are successful, Nautilus is entitled to a declaration that its Policy provides no coverage for the acts alleged in the King Complaint and Shaw Complaint because Nautilus insured a mobile home park limited liability company and not individuals using such LLC for personal purposes or an amalgamation of numerous business entities and trusts.

**WHEREFORE**, Nautilus respectfully requests that this Court inquire into these matters and declare that the Nautilus Policy provides no coverage for the allegations in the King Complaint and Shaw Complaint and Nautilus has no duty to defend or indemnify any of the defendants in those actions against such allegations, together with such other and further relief as the Court may deem just and proper.

                                                MURPHY & GRANTLAND, P.A.

                                                s/J.R. Murphy
                                                J.R. Murphy, Esquire
                                                Fed I.D. No. 3119
                                                Murphy & Grantland, P.A.
                                                P.O. Box 6648
                                                Columbia, South Carolina 29260
                                                (803) 782-4100
                                                Attorneys for Plaintiff

Columbia, South Carolina
August 17, 2020